# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7086 | **DATE** | 4/3/2003 |
| **CASE TITLE** | Pressalite Corp vs. Matsushita Elec Corp | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set out in the Memorandum Opinion and Order, defendant's Motion to Dismiss [6-1] is GRANTED IN PART and DENIED IN PART. The motion is denied as to Counts I, II and III. The motion is granted with regard to Count V, which is dismissed with prejudice. The motion is granted with regard to Count IV, and Count IV is dismissed without prejudice. Plaintiff is given leave to file on or before 4/30/03, an amended Complaint revising the allegations of Count IV to state that Count with the particularity required by Rule 9(b). Status remains set for 4/15/03. Enter Memorandum Opinion and Order. _Geraldine Soat Brown_

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | APR 04 2003 | |
| | Notified counsel by telephone. | | | date docketed | 73 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| MW | courtroom deputy's initials | 03 APR -3 AM 11:06 | 4/3/2003 date mailed notice | | |
| | | Date/time received in central Clerk's Office | MW mailing deputy initials | | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Pressalite Corporation,
an Illinois Corporation
    Plaintiff,

v.

Matsushita Electric Corporation
of America,
a Delaware Corporation
    Defendant.

)
)
)
)
)
)
)
)
)
)
)

Cause No. 02 C 7086

Magistrate Judge Geraldine Soat Brown

**DOCKETED**

APR 0 4 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Pressalite Corporation ("Pressalite") has brought a five count complaint against defendant Matsushita Electric Corporation of America ("Matsushita") for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, common law fraud, and statutory fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1 *et. seq.*)("the Consumer Fraud Act"). [Dkt# 1.] The case was removed from state court on the basis of diversity jurisdiction, and Matsushita has moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. [Dkt# 6.] The parties have consented to the jurisdiction of a magistrate judge. [Dkt# 14, 15.] For the following reasons Matsushita's motion is GRANTED IN PART and DENIED IN PART. The motion is denied as to Counts I-III. The motion is granted with regard to Count IV and Count IV is dismissed without prejudice. The motion is granted with regard to Count V, which is dismissed with prejudice for failure to state a claim.

1



## PRESSALITE'S COMPLAINT AND MATSUSHITA'S MOTION TO DISMISS

Pressalite's Complaint alleges the following facts, which are taken as true for purposes of the motion to dismiss. Pressalite contracted with Matsushita for Matsushita to provide batteries to Pressalite for use in Pressalite's manufacture of flashlights. (Compl. ¶ 3.) In April, 1999, purchasers of Pressalite's flashlights returned numerous flashlights to due to defective batteries. (*Id.*) Having been assured that the problem had been identified and corrected, Pressalite entered into a settlement agreement with Matsushita and continued to use Matsushita's batteries in its flashlights. (*Id.* ¶ 4.) Matsushita failed to remedy the defect or remove the defective batteries from distribution as promised. (*Id.* ¶ 18-19.) Following the settlement, Pressalite again began to receive flashlights returned due to defective batteries. (*Id.* ¶ 5.) After being contacted by Pressalite, Matsushita acknowledged that there was a second manufacturing defect in the batteries it had been supplying and that Matsushita had known about the defect at the time of the settlement agreement but remained silent while continuing to ship 1,600,000 defective batteries. (*Id.* ¶ 7.) Prior to and during the course of its relationship with Matsushita, Pressalite was promised by Matsushita that Matsushita would manufacture batteries that were of a high quality, free of defect and suitable as components for Pressalite's flashlights. (*Id.* ¶ 6.)

In its motion to dismiss, Matsushita argues that the agreement between the parties is governed by the "terms and conditions of sale" allegedly sent to Pressalite with every order. (Def.'s Mem. at 4.) These terms disclaim any warranties of merchantability and fitness for a particular purpose and state that the transaction is to be governed by the laws of New York. (*Id.*, Ex. 3.) In its response to Matsushita's motion, Pressalite denies ever receiving the documents upon which Matsushita relies. (Pl.'s Resp. at 3.)

# LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal on the basis of the plaintiff's "failure to state a claim upon which relief can be granted." The Rule further provides that on such a motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

In deciding a Rule 12(b)(6) motion, a court must consider "whether relief is possible under any set of facts consistent with the allegations of the plaintiff's complaint." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999). Thus, the court must "accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff." *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In addition, " a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

## I. Counts I-III: Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for Particular Purpose.

Counts I-III of Pressalite's complaint allege that Matsushita's sale of defective products constituted a breach of both express and implied warranties. (Compl. ¶¶ 12-17.) Matsushita has moved to dismiss these counts on the grounds that it expressly and conspicuously disclaimed liability for all warranties other than those stated in a written contract that allegedly governed the terms and conditions of sale. (Def.'s Mem. at 2-3.) Pressalite maintains that it did not receive the alleged

3

contract, and consequently, was not aware of any warranty disclaimers. (Pl.'s Resp. at 3-4.)

## A. Sufficiency of Pressalite's Claims

### a. Count I: Breach of Express Warranty

Pressalite alleges that when Matsushita sold and delivered defective batteries to Pressalite it breached a prior express warranty that the batteries would be high quality, free from defects, and subject to strict quality control. (Compl. ¶¶ 6, 12.) Under the Illinois Uniform Commercial Code ("IUCC"), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS § 5/2-313(a). Thus, "[t]o state a claim for breach of express warranty, the buyer must allege that the seller made: (1) an affirmation of fact or promise made to the plaintiff; (2) relating to the goods; (3) which becomes part of the basis of the bargain; and (4) guaranteeing that the goods will conform to the affirmation or promise." *Int'l. Bd. of Teamsters Local 734 Health & Welfare Trust Fund v. Phillip Morris, Inc.*, 34 F. Supp. 2d 656, 664 (N.D. Ill. 1998), *aff'd.*, 186 F.3d 818 (7th Cir. 1999).

Pressalite's Complaint includes allegations that Matsushita made affirmations to Pressalite relating to the goods for sale. (Compl. ¶¶ 6, 12.) Pressalite also alleges that Matsushita guaranteed the goods would conform to those affirmations. (*Id.* ¶¶ 3-4, 6, 12.) Although Pressalite does not state explicitly that the affirmations became part of the "basis of the bargain," it alleges that it based its decision to continue to use Matsushita as a supplier of goods on those assurances. (*Id.* ¶¶ 3-4.) Under Illinois law, a buyer must show reliance on the seller's representations in order for those representations to form part of the basis of the bargain. *Coryell v. Lombard Lincoln-Mercury*

4

*Merkur, Inc.* 544 N.E.2d 1154, 1158 (Ill. App. Ct. 1989).

The test for whether a vendor's representation is an express warranty is "whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment on a matter of which the vendor has no special knowledge, and on which the buyer may be expected also to have an opinion and to exercise his judgment." *Weiss v. Rockwell Mfg. Co.,* 293 N.E.2d 375 (Ill. App. Ct. 1977)(citing *Keller v. Flynn,* 105 N.E.2d 532, 536 (Ill. App. Ct.1952)). In the first case there is a warranty, in the second, however, there is not. *Id.* While "it is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, . . . an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." 810 ILCS § 5/2-313(a)(2). Thus, "sales talk which relates only to the value of the goods or the seller's personal opinion or commendation of the goods is considered puffing and is not binding on the seller." *Redmac, Inc. v. Computerland of Peoria,* 489 N.E.2d 380, 382 (Ill. App. Ct. 1986).

Vendors' assertions to customers that their products are of high quality and that the customers will be pleased with the products are viewed as "puffing," rather than express warranties. *See Olin Mathieson Chemical Corp. v. Moushon,* 235 N.E.2d 263, 264 (Ill. App. Ct. 1968)(plaintiff's oral statements to defendant that his product was of good quality, good results would be obtained and the customer would be pleased were statements of the seller's opinion rather than an express warranty); *Royal Business Machines, Inc. v. Lorraine Corp.* 633 F.2d 34, 42 (7th Cir. 1980)(under Indiana UCC provision identical to Illinois provision, seller's descriptions of goods as being of "high quality," requiring "few repairs" and likely to produce "substantial" profits for the buyer were viewed as

5

expressions of the seller's opinion of the goods' value and not an express warranty). Conversely, sellers' statements to a buyer that a product will be "free of defects" upon delivery and will "work for a reasonable time" can create an express warranty. *Redmac,* 489 N.E.2d at 383. Consequently, Matsushita's alleged assertions that its products were free from defects could constitute an express warranty to Pressalite under Illinois law if those assertions became part of the basis of a bargain.

Ultimately, whether an express warranty exists is a question for the trier of fact, and consequently, beyond the scope of this court's Rule 12(b)(6) determination. *Alan Wood Steel Co. v. Capital Equip. Enter., Inc.,* 349 N.E.2d 627, 633 (Ill. App. Ct. 1976). As previously mentioned, for the purposes of a motion to dismiss, this court must accept as true all well-pled factual allegations in a complaint. *Perkins,* 939 F.2d at 466.

Matsushita does not contend that Pressalite has failed to meet the pleading requirements for breach of express warranty. Although Pressalite did not attach the alleged express warranty to the complaint, the terms of an express warranty may be stated *or* attached to a complaint. *Smith v. BOC Group PLC,* No. 00 C 7909, 2001 WL 477237 at * 6 (N.D. Ill. May 4, 2001)(Pallmeyer, J.)(holding breach of express warranty claim sufficient where alleged warranty terms were outlined in the complaint instead of attached to it). In addition, while Pressalite does not specify whether Matsushita's assurances were written or oral, Pressalite's complaint states the terms of the alleged express warranty. (Compl. ¶¶ 6, 12.) This is sufficient to meet the liberal standard of notice pleading under the Federal Rules. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993); *See Specialty Moving Systems, Inc. v. Safeguard Computer Services, Inc.,* No. 01 C 5816, 2002 WL 31178089 (N.D. Ill. Sept. 30, 2002)(Grady, J.)("It is not necessary that plaintiff plead specific facts regarding whether the contract was written or

6

oral"); *But see R&L Grain Co. v. Chicago Eastern Corp.,* 531 F.Supp. 201, 209 (N.D. Ill. 1981)(requiring that plaintiff amend complaint in part because plaintiff failed to specify whether an alleged express warranty was written or oral). Pressalite has met the pleading requirements for breach of express warranty.

### b. Count II: Breach of Implied Warranty of Merchantability

Pressalite alleges that, "[b]y selling [to Pressalite] goods that were not fit for the ordinary purpose for which such goods are used," Matsushita breached an implied warranty of merchantability to Pressalite under the IUCC. (Compl. ¶ 16); 810 ILCS § 5/2-314. To state a claim for breach of implied warranty of merchantability, "plaintiffs must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Industrial Hard Chrome, Ltd. v. Hetran, Inc.,* 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999). For goods to be considered merchantable, they must conform to a set of standards which includes being "fit for the ordinary purposes for which such goods are used." 810 ILCS § 5/2-314(c).

Pressalite alleges that Matsushita's products were defective due to a manufacturing defect. (Compl. ¶¶ 3-5, 7.) In addition, it alleges that it suffered damages as a result of the defective goods and gave Matsushita notice of the defect. (*Id.* ¶¶ 7-8.) Although Pressalite states that the goods it purchased from Matsushita were not fit for the ordinary purpose for which such goods are used, Pressalite does not identify the ordinary purpose of the products. (*Id.* ¶ 16.) At least one court has held that in a claim for breach of implied warranty of merchantability, the plaintiff must specify what the product's ordinary purpose is in the complaint. *See Industrial Hard Chrome,* 64 F. Supp. 2d. at

748 (finding that plaintiff should have stated in its breach of implied warranty of merchantability claim the ordinary purpose of a series of machines purchased from defendant). However, the ordinary purpose of Matsushita's batteries can be inferred easily from the other allegations of the Complaint, and Matsushita does not contend that Pressalite has not met the pleading requirements for breach of implied warranty of merchantability. Pressalite has sufficiently pled the elements necessary to state a claim for breach of implied warranty of merchantability.

### c.     Count III: Breach of Implied Warranty of Fitness for Particular Purpose

In Count III, Pressalite alleges that Matsushita breached an implied warranty of fitness for a particular purpose when it sold goods that it knew at the time of shipment did not meet Pressalite's particular purpose for which the goods were required. (Compl. ¶ 17.) Under the IUCC, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose." 810 ILCS § 5/2-315. In order to state a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff "must allege that (1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Industrial Hard Chrome*, 64 F. Supp. 2d at 746.

Pressalite alleges in its Complaint that Matsushita promised to manufacture high quality batteries suitable as components in two models of Pressalite's flashlights, and Matsushita knew at the time of shipment that its products did not meet the particular purpose for which the goods were

required. (Compl. ¶¶ 6, 17.) In addition, Pressalite alleges it relied on Matsushita's assurances that the problem in its manufacturing process was resolved, and Pressalite communicated to Matsushita that it was relying on Matsushita's expertise, skill, knowledge and abilities to produce superior quality products suitable as component's for Pressalite's flashlights. (*Id.* ¶¶ 3-4, 17.) Thus, Pressalite has alleged that Matsushita knew of the particular purpose for which Pressalite intended to use its products, Pressalite relied on Matsushita's skill and judgment to produce suitable goods, and Matsushita was aware of this reliance. Therefore, Pressalite has sufficiently stated a claim for breach of implied warranty of fitness for particular purpose.

## B.     Matsushita's Position That the Warranties Were Disclaimed

Matsushita argues that it had a written contract with Pressalite that disclaimed all warranties but those in the contract and established a limit on the time during which a claim for breach of the contract's warranty might be brought. (Def.'s Mem. at 6, 10.) This allegedly took the form of invoices and order acknowledgments sent to Pressalite with each order. (Def.'s Mot., Ex. 2-3.) Pressalite maintains it never received these invoices or orders of acknowledgment, and consequently, had no knowledge of any warranty disclaimers. (Pl.'s Resp. at 3.)

Matsushita asks that, in determining the sufficiency of Pressalite's Complaint, the court rely on exhibits consisting of copies of the alleged warranty disclaimers. (Def.'s Am. Mem. at 5.) It argues that those documents contradict allegations in the Complaint, and thereby trump the allegations. (*Id.* at 4-5.) However, Matsushita's exhibits constitute "matters outside the pleading," and pursuant to Rule 12, the court must either exclude the documents from its deliberations, or treat the motion "as one for summary judgment" and give all parties "reasonable opportunity to present

all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(c).

As a general rule, "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). Matsushita incorrectly asserts that its documents meet this standard. (Def.'s Am. Mem. at 5.) In *Rosenblum*, an individual plaintiff sued the company to whom he had sold his former business, claiming breach of contract and fraud. 299 F.3d at 659. Although the contractual provisions attached by exhibit to defendant's motion to dismiss differed from those included in the complaint, the court allowed their inclusion because the two agreements were clearly interrelated and "explicitly part of the 'entire agreement.'" *Id.* at 661. In the instant case, Matsushita's exhibits do not constitute part of any agreement referred to or offered up by Pressalite. Rather, Pressalite claims to have no knowledge of the alleged contractual provisions upon which Matsushita relies.

In *Kaczmarek v. Microsoft Corp.*, 39 F. Supp. 2d 974, 975 (N.D. Ill. 1999), also cited by Matsushita, the court agreed to consider as part of its Rule 12(b)(6) determination warranties attached to the defendant's motion to dismiss, because the plaintiff had specifically referred to the warranties her complaint. Conversely, Pressalite does not refer to the invoices and order acknowledgments appended to Matsushita's motion to dismiss at any point in the complaint. Indeed, Pressalite specifically denies ever having received them. (Pl.'s Resp. at 3.)

In view of the factual dispute between the parties as to whether the documents relied upon formed any part of the contract between them, those documents cannot be considered on a motion

to dismiss. Further discovery is required regarding the factual dispute. Thus, the motion to dismiss will not be converted into a summary judgment motion. Because Pressalite has sufficiently stated a claim upon which relief can be granted in Counts I-III, Matsushita's motion to dismiss those three counts is denied.

## II.    Count IV: Common Law Fraud

Matsushita has moved to dismiss Count IV on the grounds that Pressalite has failed to state its claim with particularity as required by Fed. R. Civ. P. 9(b), and that the claim is duplicative of Matsushita's claim for breach of warranty. Pressalite has failed to state its fraud claim with particularity as required by Fed. R. Civ. P. 9(b), and thus Count IV will be dismissed without prejudice and with leave to replead.

Pressalite's fraud claim is not a duplicate of its warranty claim. The parties dispute whether this issue is governed by the law of Illinois or New York. (Pl.'s Resp. at 5; Def.'s Am. Mem. at 5.) Fortunately, it is not necessary to resolve this issue as the same result applies in either case. *See e.g. In re Air Crash Disaster,* 526 F. Supp. 226, 228 (N.D. Ill. 1981)(no need to determine whether state or federal law govern if application of either leads to the same result).

Pressalite's claim is not a duplicate under Illinois law. Although it is clear that a mere breach of contract cannot be the premise of a fraud claim, that is not a fair description of Pressalite's Complaint. *See Continental Grain Co. v. Pellman Standard, Inc.* 690 F. Supp. 628, 634 (N.D. Il. 1988)(applying Illinois law). Pressalite alleges that after Matsushita became aware of the second defect in its product it failed to disclose this defect and continued to ship defective batteries to Pressalite. (Compl. ¶ 7.) Pressalite also alleges that Matsushita failed to remedy the first defect or

11

remove these batteries from distribution as promised and instead continued to ship defective batteries to Matsushita. (*Id.* ¶¶ 7, 19, 21.) This factual situation is similar to that addressed in *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035 (7th Cir. 1990). In this case the defendant had produced faulty screws. *Id.* at 1038. After the plaintiff discovered the fault, the defendant agreed to ship new screws. *Id.* at 1039. Prior to shipping defendant tested the new screws and discovered that twenty-six out of the thirty tested were defective but shipped them anyway, without informing the plaintiff. Plaintiff eventually sued for breach of warranty and fraud. *Id.* at 1040. In upholding the findings of breach of warranty and fraud, the court explained, "A seller who has reason to know that the failure of his product to perform in the manner warranted is due to a defect in the product [cannot] keep silent . . . Such a seller commits fraud." *Id.* at 1041. Here, Pressalite does not allege fraud based on the Matsushita's "alleged *contractual* obligation," as in *General Electric Railcar Leasing Services Corp. v. Carlson Marketing Group.*, No. 91 C 5345, 1992 WL 70319 at *2 (N.D. Ill. Mar. 31, 1992)(Conlon, J.)(emphasis in original). Rather, it alleges an entirely separate fraud arising from Matsushita's alleged intentional concealment of defects. (Compl. ¶¶ 19-25.) As a result, Pressalite's claim is not duplicative.

New York law, like Illinois law, provides that, "[a] cause of action to recover damages will not lie when the only fraud alleged relates to a breach of contract." *Morgan v. A.O. Smith Corp.*, 697 N.Y.S. 2d 152, 152 (N.Y. App. Div. 1999). However, "where, as here, [plaintiff's] allegation of intentional fraud, though parallel in many respects to the breach of contract claim include[s] claims of fraudulent misrepresentations" outside of the contract then the fraud claim can be maintained separate from the contract claim. *Gizzi v. Hall*, 754 N.Y.S. 2d 373, 375 (N.Y. App. Div. 2002)(internal citations omitted).

12

Fed. R. Civ. P. 9(b) states that "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Under the Rule, the plaintiff must provide "the who, what, when, where, and how: the first paragraph of any news story." *DiLeo v. Ernst and Young*, 901 F.2d 624, 627 (7th Cir. 1990). Within this framework the plaintiff must plead with a level of specificity consistent with the rest of the Federal Rules and the purposes of Rule 9. In *Reshal Associates Inc. v. Long Grove Trading Co.* the court observed that

> Rule 9(b) must also be read in conjunction with [Federal Rule of Civil Procedure] 8, which requires a plaintiff "to make known his claims simply and concisely in short, plain statements." Furthermore, Rule 9(b) must not be applied blindly, but rather must be applied in view of its purposes, which are (1) to inform the defendants of the nature of the claimed wrong and enable them to formulate an effective response and defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations.

754 F. Supp. 1226, 1230 (N.D. Ill. 1990)(internal quotations omitted).

With regard to the 'who' requirement, a plaintiff provides proper Rule 9(b) notice by identifying the individuals making the alleged misrepresentations as employees of the defendant. *Heller Brothers Bedding, Inc. v. Leggett & Platt, Inc.*, No. 01 C 3409, 2001 WL 740514 at * 3 (N.D. Ill. June 28, 2001)(Conlon, J.). Pressalite meets this requirement, alleging that the relevant misrepresentations were made by "Matsushita," (Compl. ¶¶ 4, 6-7, 18, 20-21), or "Matsushita's representatives." (*Id.* ¶ 19.)

To properly plead the "what" element, a plaintiff must identify the "specific content" of the alleged misrepresentations. *Graue Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 993 (7th Cir. 1991)(quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)). A plaintiff need not, however, provide "evidentiary details" but need only

plead a "basic outline of the scheme." *Caliber Partners, Ltd. v. Affeld*, 583 F. Supp. 1308, 1311 (N.D. Ill. 1984); *see also Reshal*, 754 F. Supp at 1231 ("Plaintiffs have provided several concrete examples . . . and one reason for the lack of further specificity may be a desire to avoid overwhelming the complaint with impenetrable and complex details that could be more easily shared during discovery"). Pressalite meets this requirement by stating, for example that "Matsushita's representatives intentionally misrepresented to Pressalite that 'most' of the defectively [*sic*] n-sized batteries had been removed from distribution and also misrepresented that it had remedied the defects." (Compl. ¶ 19; *see also* ¶¶ 4, 6-7, 18, 20-21.) This is sufficient to provide an outline of the allegedly fraudulent scheme.

In *Sequal Capital Corp., v. Airship International Ltd.*, 148 F.R.D. 217, 219-220 (N.D. Ill. 1993), the court held that failure to allege the location of allegedly fraudulent communications, in conjunction with failure to allege the manner in which the statements were communicated, warranted dismissal under Rule 9(b). In contrast, in *Towers Financial Corp. v. Solomon,* 126 F.R.D. 531, 535-536 (N.D. Ill. 1989), the court stated that "the specificity requirements of Rule 9 are imposed to ensure that the defendants are appraised of the claimed fraud in a manner sufficient to permit adequate responsive pleadings" and failure to plead the location of a fraud does not automatically render a complaint insufficient under Rule 9(b). Here, Pressalite's Complaint alleges that all communications between the parties, as well as the alleged intentional concealment, took place in Illinois, where Pressalite is located. (Compl. ¶¶ 27, 30.) This is sufficient, when read with the rest of the Complaint, to allow Matsushita to formulate an effective response.

Pressalite's present Complaint provides insufficient information to meet the "when" and "how" requirements. To plead the "when" requirement properly, a plaintiff need not identify the

14

precise time at which an alleged misrepresentation was made but may provide a "general time." *Caliber*, 583 F.Supp. 1311. In *Caliber*, the time frame was "spring 1981." *Id.* at 1310. In *Sheilds v. Erickson*, 710 F.Supp. 686, 689 (N.D. Ill. 1989), the court allowed a four year period based in part on the significant number of transactions and the extended period of time over which they had taken place. *See also Heller Brothers*, 2001 WL 740514 at * 3 (plaintiff provides proper Rule 9(b) notice by identifying the "general time frame" in which the alleged misrepresentations were made). Pressalite fails to meet the "when" requirement as to all of the alleged fraudulent acts. A relatively short time frame for most of the fraudulent acts is identified. (Compl. ¶¶ 4, 7, 19, 20-22.) However, the time frame alleged for the statements that Matsushita "would manufacture (a) high quality batteries suitable as a component in the Model 110 and Model 220 flashlights, and (b) products that were free [from] defects and subject to strict quality control" is alleged to be "prior to and during the course of Pressalite's development and sale of its flashlights." (*Id.* ¶ 6.) That does not comply with Rule 9(b). Matsushita cannot be assumed to know during what period Pressalite was developing its flashlights.

To meet the "how" requirement Pressalite need not plead in significant detail, but some information must be provided. *See Sequal Capital*, 148 F.R.D. at 219-220. In *Cortes v. Gratkowski*, 1991 WL 632 at * 4 (N.D. Ill. Jan. 3, 1991)(Holderman, J.), the court found that an allegation that defendant made "various oral and written untrue statements" was sufficient under Rule 9(b), given the inferences that could be drawn from other parts of the complaint in that case. Pressalite's Complaint alleges that Matsushita's representatives intentionally misrepresented the quality of its batteries and concealed the existence of a known manufacturing defect. (*E.g.* Compl. ¶¶ 3-7.) However, Pressalite has failed to plead even the form, oral or written, in which the allegedly

15

fraudulent statements were made. In oral argument to this court on the motion to dismiss, Pressalite stated that the alleged misrepresentations were both oral and written in various brochures. Pressalite's Complaint fails to provide sufficient information to allow the Matsushita to identify which allegedly fraudulent statements come from brochures and which are statements of its employees.

When an unamended complaint fails to comply with Rule 9(b), dismissal of the complaint with leave to refile is the appropriate remedy. *See* Fed. R. Civ. P. 15(a)(leave to amend shall be freely given when justice requires); James W. Moore *et. al.*, *Moore's Federal Practice–Civil* vol. 2 § 9.03(1)(g)(4)(2002)("The pleader usually will be permitted or have the right to amend to bring the pleading into compliance with the requirements of Rule 9(b)"); *Robinson v. Midlane Club, Inc.*, No. 94 C 1489, 1995 WL 453057 at * 7 (N.D. Ill. July 28, 1995)(Marovich, J.)(allegation of fraud that was "far too vague and conclusory" dismissed under Rule 9(b) after plaintiff was offered four opportunities to plead in compliance with the rule). Thus, Count IV is dismissed without prejudice, and Pressalite is granted leave to file an amended complaint, amending only Count IV to comply with the requirements of Rule 9(b).

## III.    Count V: Statutory Fraud

Matsushita has moved to dismiss Count V on the grounds that Pressalite fails to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act"), fails to state its statutory fraud claim with particularity, and Pressalite's fraud claim duplicates its warranty claim. Matsushita's motion is granted because Pressalite fails to state a claim under the Act.

Pressalite argues that Matsushita does not meet the Act's definition of "consumer" and has

16

failed to plead the necessary consumer nexus. A business may have standing under the Act in some circumstances. *Lake County Grading Co. of Libertyville, Inc. v. Advanced Mechanical Contractors, Inc.*, 654 N.E.2d 1109, 1114 (Ill. App. Ct. 1995)("Plaintiff is correct in noting that the protections of the Act are not limited only to consumers.") However, Pressalite has failed to plead the necessary nexus to consumer protection concerns.

The fact that Pressalite purchased component parts from Matsushita does not render it a consumer under the Act. 815 ILCS § 505/1(e)(consumer defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household"); *Stepan Co. v. Winter Panel Corp.* 948 F. Supp. 802, 807 (N.D. Ill. 1996)(company that purchased component incorporated into product later re-sold to consumers found not to be a consumer).

In the case when "a dispute involves two businesses that are not consumers, the proper test is 'whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Lake County*, 654 N.E.2d at 1115 quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989); *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-437 (7th Cir. 1996). While the Act was amended subsequent to *Downers Grove*, "post amendment case law has continued to recognize that the Act does not apply to every commercial transaction regardless of the relationship between the parties." *Id.*

Pressalite acknowledges that "there must be some nexus between the complaint of conduct and consumer protection concerns." (Pl.'s Resp. at 7.) Pressalite states that because it sold 514,500 flashlights, of which 23,170 were returned as defective, "[c]learly the flashlights were placed into

17

the stream of commerce and affected consumers." (*Id.* at 7-8.) However, that argument has been rejected. "Courts have consistently resisted attempts by plaintiffs to portray otherwise ordinary breach of contract claims as causes of action under the Illinois Consumer Fraud Act." *188 LLC*, 2001 WL 506891 at * 2. While "[a]lmost every product or service sold by one commercial party to another will ultimately affect a consumer . . . the act does not apply to all commercial transactions." *Id.* at * 3. Thus "to state a cause of action under the Act, something more must be alleged than a mere effect on consumers." *Id.; See Williams Electronic Games Inc. v. Barry*, No. 97 C 3743, 2001 WL 1104619 at * 10 (N.D. Ill. Sept. 18, 2001)(Gettleman, J.)("The mere fact that plaintiff's product may ultimately be sold to a consumer is too attenuated."); *See Simon v. Oltmann*, No. 98 C 1759, 2001 WL 1035719 at * 8 (N.D. Ill. Aug. 21, 2001)(Leinenweber, J.)("Courts have struggled to define the scope of . . . [consumer protection concerns] but it generally involves sharp practices designed to mislead consumers about a competitor . . . or public health, safety or welfare issues."). Pressalite fails to identify a nexus other than the ultimate sale of its flashlights to consumers and thus fails to state a claim under the Act.

At oral argument on the motion to dismiss, Pressalite's counsel was asked whether, if given leave to replead, there were any additional facts that Pressalite could allege to support a consumer nexus. Pressalite's counsel answered, consistent with his responsibility as an officer of the court, that there were no additional facts that could be alleged. Thus, Count V is dismissed without leave to amend.

## CONCLUSION

For the above reasons Matsushita's motion is GRANTED IN PART and DENIED IN PART.

The motion is denied as to Counts I, II and III. The motion is granted with regard to Count V, which is dismissed with prejudice. The motion is granted with regard to Count IV, and Count IV is dismissed without prejudice. Pressalite is given leave to file on or before April 30, 2003, an Amended Complaint revising the allegations of Count IV to state that Count with the particularity required by Rule 9(b).

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED: April 3, 2003**

19